**BROWN KWON & LAM, LLP**
Clara Lam, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IOLANDA MAZZARA,**<br>*on behalf of herself and others similarly situated*,<br><br>**Plaintiff,**<br><br>- against -<br><br>**ROBUST ENTERPRISE CORP.**<br>**d/b/a LACE WAYNE, and**<br>**SIMONE MIR,**<br><br>**Defendants.** | **Civil Action No: 2:21-CV-4609**<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |

Plaintiff IOLANDA MAZZARA ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, ROBUST ENTERPRISE CORP. d/b/a Lace Wayne (hereinafter, "Corporate Defendant") and SIMONE MIR (hereinafter, "Individual Defendant" and together with Corporate Defendant, "Defendants") and alleges as follows:

### INTRODUCTION

1.       Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from

Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unlawfully deducted wages, (4) unlawfully retained gratuities, (5) liquidated damages, and (6) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New Jersey Wage and Hour Law ("NJWL") N.J.S.A. 34:11-56a *et seq.*, the supporting New Jersey common law, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unlawfully deducted wages, (4) misappropriated tips, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. ("NJLAD"), that she was deprived of her statutory rights as a result of Defendants' discriminatory employment practices and subjected to bias-based harassment on the basis of national origin, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

### *IOLANDA MAZZARA*

8.      Plaintiff is an adult who resides in Richmond County, New York.

9.      Plaintiff was a covered employee within the meaning of the FLSA and NJWL.

10.     Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

### *Defendants*

11.     At all relevant times, Defendants owned and operated an adult entertainment club under the tradename "Lace Wayne," located at 24 Galesi Drive, Wayne, NJ 07479. Defendants operate Lace Wayne through Corporate Defendant ROBUST ENTERPRISES CORP..

12.     At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

13.     At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

14.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NJWL.

### *ROBUST ENTERPRISES CORP.*

15.     Corporate Defendant ROBUST ENTERPRISES CORP. is a domestic limited liability company organized under the laws of the State of New Jersey with a principal place of business located at 24 Galesi Drive, Wayne, NJ 07479, and an address for service of process located at c/o Simone Mir, 216 Middle Road, Hazlet, New Jersey 07730.

16.    At all relevant times, ROBUST ENTERPRISES CORP. has done business as Lace Wayne.

17.    At all relevant times, ROBUST ENTERPRISES CORP. had an annual dollar volume of sales in excess of $500,000.

18.    ROBUST ENTERPRISES CORP. is a covered employer within the meaning of the FLSA and NJWL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

19.    At all relevant times, ROBUST ENTERPRISES CORP. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

20.    ROBUST ENTERPRISES CORP. applies the same employment policies, practices and procedures to all entertainers at Lace Wayne.

**SIMONE MIR**

21.    At all relevant times, Individual Defendant SIMONE MIR has been an owner and operator of Lace Wayne.

22.    At all relevant times, SIMONE MIR has been a principal of each of the Corporate Defendant.

23.    At all relevant times, SIMONE MIR has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Lace Wayne.

24.    At all relevant times, SIMONE MIR has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Lace Wayne.

25.     At all relevant times, SIMONE MIR has had the power to maintain employment records, including time and/or wage records of employees at Lace Wayne.

26.     At all relevant times, SIMONE MIR has been actively involved in managing the day to day operations of Lace Wayne.

27.     At all relevant times, SIMONE MIR has had authority over personnel or payroll decisions and employment policies, practices and procedures at Lace Wayne.

28.     At all relevant times, SIMONE MIR has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

29.     SIMONE MIR is a covered employer within the meaning of the FLSA and NJWL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt employees employed as entertainers at Lace Wayne, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

31.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members minimum wage for all hours worked up to forty (40) per workweek, overtime wages for all hours worked in excess of forty (40) per workweek; for unlawfully deducting earnings from Plaintiff and FLSA Collective Members, and unlawfully retaining a portion of tips

that Plaintiff and FLSA Collective Members earned from customers. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

32.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

33.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

34.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW JERSEY CLASS ACTION ALLEGATIONS

35.     Plaintiff brings the Second Cause of Action, the NJWL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt employees employed as entertainers at Lace Wayne, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "NJWL Class").

36.     Plaintiff brings the Third and Fourth Causes of Action, the New Jersey common law claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt employees employed as entertainers at Lace Wayne, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "NJ Common Law Class", together with the NJWL Class, the "NJ Classes" or "Class Members").

37.     Excluded from the NJ Classes are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the NJ Classes.

38.     The members of the NJ Classes are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

39.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of each of the NJ Classes.

40.     Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

41.     Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

42.    Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NJWL and the New Jersey common law.

43.    Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

44.    Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

45.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

46.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

47.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

48.    Defendants and other employers throughout the state violate the NJWL and New Jersey common law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  This is particularly true of entertainers who work for gentleman's clubs, such as Lace Wayne, who have traditionally been an exploited workforce.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

49.    Common questions of law and fact exist as to the NJWL Class that predominate over any questions only affecting Plaintiff and individual members of the NJWL Class, and include, but are not limited to, the following:

a.    Whether Defendants employed Plaintiff and the NJWL Class within the meaning of the NJWL;

b.    Whether Defendants misclassified Plaintiff and the NJWL Class as independent contractors;

c.    Whether Defendants paid Plaintiff and the NJWL Class for all hours worked;

d.    Whether Defendants paid Plaintiff and the NJWL Class at the lawful minimum wage rate;

e.    Whether Defendants paid Plaintiff and the NJWL Class overtime premium;

f.    Whether Defendants misappropriated tips from Plaintiff and the NJWL Class by retaining a portion of the tips they earned from customers; and

g.  Whether Defendants misappropriated tips from Plaintiff and the NJWL Class by requiring them to share tips with non-tipped employees.

50.   Common questions of law and fact exist as to the NJ Common Law Class that predominate over any questions only affecting Plaintiff and individual members of the NJ Common Law Class, and include, but are not limited to, the following:

a.  Whether Defendants were unjustly enriched by improperly retaining gratuities earned from Plaintiff and the NJ Common Law Class; and

b.  Whether Defendants wrongfully exercised control over Plaintiff's and NJ Common Law Class Members' property.

## STATEMENT OF FACTS

51.   Plaintiff was employed by Defendants as an entertainer at Lace Wayne, an adult entertainment club, located at 24 Galesi Drive, Wayne, NJ 07479, from in or around November 2017 until on or about March 15, 2020.

52.   At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members were employees of Defendants.

53.   At all times, Plaintiff, FLSA Collective Plaintiffs and the NJ Classes were not independent contractors. Defendants exercised a great deal of control over their work at Lace Wayne.  At all times, Defendants imposed strict guidelines on Plaintiff, FLSA Collective Plaintiffs and the NJ Classes.  For example, Defendants controlled their outfits, including what their outfits should look like and what type of shoes to wear. Defendants required all entertainers, including Plaintiff, to dance on stage, work for which they were not compensated. Entertainers were put into a stage rotation and were required to dance at the time their name was called. When on stage, Defendants controlled where they could dance and issued strict instructions on how they were permitted to dance on stage.  Plaintiff, FLSA Collective Plaintiffs and the NJ Classes had no control over the songs that were played while they were dancing on stage.  Defendants had a policy

requiring each of them to dance on stage for at least three songs. Plaintiff, FLSA Collective Plaintiffs and the NJ Classes could not leave the stage until each individual was released by the manager. When not on stage, or performing lap dances/VIP room service, Plaintiff, FLSA Collective Plaintiffs and the NJ Classes were required to talk to customers and dance on the floor. If Plaintiff, FLSA Collective Plaintiffs and the NJ Classes were not with a customer or dancing, they would be reprimanded by managers. Moreover, even when Plaintiff, FLSA Collective Plaintiffs and members of the NJ Classes acquired customers for lap dances or services in the VIP rooms, Defendants were able to reassign and did reassign other entertainers to the customers.

54.    Defendants also controlled Plaintiff, FLSA Collective Plaintiffs and the NJ Classes' work schedules. Plaintiff and other entertainers were not permitted to decide on their own work schedules. From in or around November 2017 through in or around November 2019, Plaintiff regularly worked from 7:00pm to 3:00am, for six (6) days a week, for a total of forty-eight (48) hours per week. From in or around December 2019 through the end of Plaintiff's employment, Plaintiff regularly worked from 7:00pm to 3:00am, for five (5) days a week, for a total of forty (40) hours per week. At all times, Plaintiff worked without any breaks. At all times, Plaintiff's hours were set by Defendants, and Plaintiff was not permitted to leave early. FLSA Collective Plaintiffs and NJ Class Members were required to work similar hours.

55.    At all times, Plaintiff, FLSA Collective Plaintiffs and the NJ Classes were not paid any base wages by Defendants as Defendants misclassified Plaintiff, FLSA Collective Plaintiffs and the NJ Classes as independent contractors. Due to Defendants' misclassification, all entertainers were not paid their minimum wage and overtime premium.

56.    At all times, instead of receiving any wages or compensation from Defendants, customers would pay Plaintiff, FLSA Collective Plaintiffs and the NJ Classes gratuities which

were set by Defendants for dances performed (lap dance or table dance) in the general area of the club or in semi-private or private rooms ("VIP rooms"). Specifically, customers would pay Plaintiff a minimum of $20 per song for lap dances and table dances, and minimums of $150 per 15 minutes or $300 per 30 minutes for dances in semi-private VIP rooms. In the private VIP rooms, customers paid Plaintiff a minimum of $400 per half an hour and $600 per hour. These rates were set solely by Defendants. FLSA Collective Plaintiffs and the NJ Classes were similarly paid by customers through gratuities or tips at rates set by Defendants.

57.      Thus, entertainers were entirely dependent upon customers to earn their pay.  For lap dances and table dances, customers would pay dancers either with cash or with Defendants' "funny money." Defendants' "funny money" was Lace Wayne's money voucher which customers were required to purchase from Defendants. When entertainers exchanged the club's "funny money" for real cash, they did not receive the full monetary value of the voucher. Instead, at all relevant times, they would receive approximately $15 for every $20 of "funny money."

58.      With respect to VIP room services, customers would typically pay Defendants directly through a credit card payment. Defendants would then remit the amount to Plaintiff, FLSA Collective Plaintiffs and the NJ Classes.

59.      For all of these payments, Defendants did not inform customers that such payments were not gratuities and customers have absolutely no reason to believe that the money they pay entertainers were not fully retained by the entertainers.  Moreover, Defendants failed to keep any record of the number of dances performed by entertainers for customers. With respect to these payments, Defendants deducted from Plaintiff and other entertainers 20% of their total earnings earned from customers through tips and gratuities and retained such deductions for themselves.

60.     In addition to the unlawful 20% deduction of their total earnings, Lace Wayne also collected unlawful house fees from each entertainer for each shift that they worked. Throughout Plaintiff's employment, Defendants charged Plaintiff, FLSA Collective Plaintiffs and the NJ Classes a number of "house fees".  Specifically, Plaintiff, FLSA Collective Plaintiffs and the NJ Classes were each required to tip-out to the DJ, a minimum of $50 per workday, and to the house, a "house fee" of $35 per day. These fees were charged regardless of whether entertainers made any earnings for the night. It was Defendants' policy that any entertainer who refused to tip-out was not permitted to dance on their behalf.

61.     At all times, Defendants failed to keep, record or maintain any records of the number of hours worked by Plaintiff, FLSA Collective Plaintiffs and the NJ Classes.

62.     At all times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs and the NJ Classes any base pay, including their minimum wage and proper overtime premium.

63.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs and the NJ Classes did not receive wage statements from Defendants.

64.     Based on her observations and conversations with other entertainers at Lace Wayne, all FLSA Collective Plaintiffs and Class Members were subject to the same unlawful policies.

*                *                *

65.     Plaintiff is Italian-American and her ethnicity and national origin is of Italian descent.

66.     At all relevant times, Defendants had a preference for employees from Russia or of Russian descent and gave preferential treatment to the female Russian employees.  For example, Russian employees were permitted to go home early when they were sick or unwell while non-

Russian employees, like Plaintiff, were required to finish their shifts even if they were unwell. Defendants further exclusively scheduled Russian employees to work Saturday nights, which were the busiest nights at Lace Wayne, with the highest earning potential. Russian employees were also given priority and preferential treatment for customers and more work opportunities for private dances in the VIP rooms. Defendants additionally deducted a smaller percentage of earnings from Russian employees for "house fees" and their kickback. Furthermore, even though Defendants had workplace rules and guidelines, the Russian employees were not punished for breaking the rules and guidelines, misbehaving, or causing unruly conduct. On the other hand, Plaintiff and other non-Russian employees were immediately reprimanded for the same conduct.

67.     Due to Defendants' discriminatory policies, Plaintiff's earnings were significantly less than her Russian counterparts, despite performing identical work.

68.     As a result of Defendants' preferential treatment for Russian employees, Plaintiff was also subjected to a bias-based harassment, including a hostile work environment where the Russian employees bullied the non-Russian employees. The female Russian employees regularly called her derogatory names and commented on her ethnicity.  In fact, as a non-Russian employee, she was forbidden to sit at the tables.

69.     On one occasion, Plaintiff was assaulted by a female Russian employee, where she was placed in a chokehold and could not breathe. After the incident, Defendants reduced Plaintiff's work schedule for causing trouble even though she was the one who was assaulted.

70.     Plaintiff complained of discrimination to management, including to Shaquille, the manager, but they never responded or addressed the situation. Moreover, if there was an altercation between a female Russian employee and a non-Russian employee, the non-Russian employee would be suspended or terminated, regardless of who initiated the altercation or who was at fault.

71.    Plaintiff also suffered from severe anxiety, depression, insomnia, and loss of appetite, as a result of Defendants' discriminatory treatment.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

72.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

73.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

74.    Pursuant to the FLSA, 20 U.S.C. § 206, Plaintiffs and FLSA Collective Plaintiffs were entitled to be compensated at a rate of at least $7.25 per hour.

75.    Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

76.    Defendants was not allowed to avail itself of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et seq.*

77.    Defendants unlawfully kept a portion of tips that Plaintiff and FLSA Collective Members earned from customers, in violation of the FLSA, 29 U.S.C. § 203(m), by charging a 20% fee on all earnings, including gratuities, and by requiring them to share tips with non-tipped employees.

78.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

79.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

80.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

81.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages from illegal retention of gratuities and by being denied minimum wage, overtime and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

82.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## COUNT II

### VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW

83.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

84.     At all times relevant, Plaintiff and the NJWL Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the NJWL Class within the meaning of the NJWL, N.J.S.A. § 34:11-56a, *et seq*., and the supporting New Jersey Department of Labor and Workforce Development Regulations.

85.     Defendants failed to pay Plaintiff and the NJWL Class their minimum wage and overtime wage to which they were entitled under the NJWL and the supporting New Jersey Department of Labor and Workforce Development Regulations. Under the NJWL, Defendants are required to compensate them at a rate of one-and-a-half times their regular rate for all hours worked in excess of forty (40) hours per workweek.

86.     Pursuant to the N.J.S.A. § 34:11-56a, *et seq*., and the supporting New Jersey Department of Labor and Workforce Development Regulations, Defendants are required to pay Plaintiff and the NJWL Class the full minimum wage rate.

87.     Defendants were not allowed to avail itself of the tip credit under the NJWL as they not only failed to properly provide notice of the tip credit provisions and their intent to apply a tip credit to their wages, but they failed to even compensate Plaintiff and the NJWL Class any base rate for their hours worked.

88.     Defendants knowingly and willfully failed to pay Plaintiff and the NJWL Class their minimum wage.

89.     Defendants knowingly and willfully failed to pay Plaintiff and the NJWL Class their overtime wages for hours worked in excess of forty (40) hours per workweek.

90.     Defendants unlawfully retained part of the gratuities received by Plaintiff and the NJWL Class in violation of NJWL.

91.     As a result of Defendants' willful violations of the NJWL, Plaintiff and the NJWL Class are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime wages, misappropriated tips, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NJWL.

## COUNT III

## VIOLATION OF THE NEW JERSEY COMMON LAW – UNJUST ENRICHMENT

92.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93.     Plaintiff and the NJ Common Law Class worked for Defendants under the promise and expectation that they would receive their tips in its entirety.

94.     Defendants accepted their services and received the benefit of Plaintiff and the NJ Common Law Class Members working at their place of employment.

95.     Defendants deducted from Plaintiff and the NJ Common Law Class 20% of their total earnings and retained such amounts for themselves. This percentage was based on the NJ Common Law Classes' total earnings, which included tips and gratuities earned by Plaintiff and the NJ Common Law Class.

96.     Allowing Defendants to use the tips misappropriated from Plaintiff and the NJ Common Law Class for their benefit, would be inequitable and in contrast to the well-established common law principles.

97.     Accordingly, Plaintiff and the members of the NJ Common Law Class are entitled to recover from Defendants the amount of illegally deducted wages and gratuities earned that they retained, as may be determined at trial, actual damages, and such other relief as this Court shall deem just and proper.

## COUNT IV

## <u>VIOLATION OF THE NEW JERSEY COMMON LAW – CONVERSION</u>

98.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

99.     Plaintiff and the NJ Common Law Class worked for Defendants under the promise and expectation that they would receive the tips they earned based on their customer interaction.

100.     The service charges and gratuities are the property of Plaintiff and the NJ Common Law Class.

101.     Defendants wrongfully interfered with Plaintiff's and the NJ Common Law Class's rights to their legally earned service charges and gratuities by deducting a portion of their earnings and retaining it for themselves as a kickback.

102.     Allowing Defendants to interfere with their service charges and gratuities earned by Plaintiff and the NJ Common Law Class, would be inequitable and in contrast to well-established common law principles.

103.     Accordingly, Plaintiff and the members of the NJ Common Law Class are entitled to recover from Defendants the amount of deductions retained by Defendants as a kickback, as may be determined at trial, actual damages, and such other relief as this Court shall deem just and proper.

## COUNT V

## <u>VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION</u>

104.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

105.     Plaintiff is an employee and a protected person within the meaning of the NJLAD and Defendants are covered employers under the NJLAD.

106.    Defendants violated Plaintiff's statutorily protected rights under the NJLAD, N.J.S.A. 10:5-1, *et seq.*, by engaging in discriminatory employment practices and subjecting Plaintiff to bias-based harassment based on her national origin. Defendants subjected Plaintiff to inferior terms, conditions or privileges of employment on the basis of her national origin.

107.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NJLAD.

108.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

109.    Due to Defendants' violations of the NJLAD, namely, employment discrimination on the basis of national origin, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the NJ Classes, respectfully requests that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d. An award of unpaid minimum wage and overtime due under the FLSA and NJWL;

e. An award of unlawfully retained tips due under the FLSA and NJWL;

f.   An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage; overtime; full and proper wages for all hours worked; and misappropriated tips, pursuant to the FLSA or NJWL;

g.   An order awarding relief for Defendants' discriminatory conduct in violation of the NJLAD, including but not limited to economic, compensatory and punitive damages;

h.   Pre-judgment and post-judgment interest;

i.   Reasonable attorneys' fees and costs of this action;

j.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NJWL;

k.   A declaratory judgment that the practices complained of herein are unlawful under the NJLAD;

l.   An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

m.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated:  March 9, 2021                    Respectfully submitted,

                                         **BROWN KWON & LAM, LLP**

                         By:     _/s/ Clara Lam_____

                                 Clara Lam, Esq.
                                 521 Fifth Avenue, 17th Floor
                                 New York, NY 10175
                                 Tel.: (718) 971-0326
                                 Fax: (718) 795-1642
                                 clam@bkllawyers.com
                                 _Attorneys for Plaintiff_

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I, IOLANDA MAZZARA hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against ROBUST ENTERPRISE CORP. and SIMONE LEMIR, and/or related entities and individuals to recover unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.


Name: IOLANDA MAZZARA


Date:  10/20/20